UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

UNITED STATES OF AMERICA

v.                                          Criminal No.4:12cr28

MICHAEL JAY TUCKER,

        Defendant.

## OPINION AND ORDER

This matter is currently before the Court on a motion filed by Michael Jay Tucker ("Defendant") and a supplemental motion filed by Mr. Diamonstein, defense counsel, on behalf of Mr. Tucker.  Defendant moves for the withdrawal of his accepted guilty plea, pursuant to Federal Rule of Criminal Procedure 11(d)(2).  The Government has filed a brief in opposition to Defendant's motions.  After examination of the motions, briefs, and the record, the Court has determined that an evidentiary hearing on the instant motions is unnecessary, as the facts and legal arguments are adequately presented, and the decisional process would not be aided significantly by oral argument.  For the reasons set forth below, Mr. Tucker's motions to withdraw his plea of guilty are **DENIED**.

## I. Factual and Procedural History

On March 14, 2012, Michael Jay Tucker and two others were indicted in a six-count indictment charging them as follows:  Conspiracy to

1

Obstruct, Delay, and Affect Commerce by Robbery in violation of 18 U.S.C § 1951(a) (Count One); Obstruct, Delay and Affect Commerce by Robbery in violation of 18 U.S.C. §§ 1951(a) and 18 U.S.C. § 2 (Counts Two, Three, and Five); Using, Carrying, and Possessing a Firearm in Relation to a Crime of Violence in violation of 18 U.S.C. §§ 924(c)(1) and 18 U.S.C. § 2 (Counts Four and Six).  The charges stem from three armed robberies at the following locations: the Happy Shopper convenience store in Hampton, Virginia on or about January 22, 2012; the One Stop Food Mart convenience store in Newport News, Virginia on or about January 23, 2012; and the Hardee's restaurant in Hampton, Virginia on or about January 23, 2012.  Mr. Tucker was arrested on April 27, 2012 and is currently in custody.

On May 14, 2012, Mr. Tucker filed notice of his intent to rely on the insanity defense and to present expert testimony concerning his mental condition.  ECF No. 28.  On May 16, 2012, Mr. Tucker filed a motion for psychiatric exam to determine competency.  ECF No. 31. This Court issued an order granting that motion on May 17, 2012.  ECF No. 32.  On May 29, 2012, the Court ordered that Mr. Tucker be committed to the custody of the Attorney General for placement in a suitable facility for a reasonable period of time for the purposes of conducting an examination to determine 1) whether Mr. Tucker was insane at the time of the violations charged in the indictment, and 2) whether Mr. Tucker may presently be suffering from a mental disease or defect

2

rendering him mentally incompetent. ECF No. 35. On May 23, 2012, defense counsel moved to continue trial pending the outcome of the Court's competency determination. ECF No. 33. The Court continued the trial until further order on June 15, 2012. ECF No. 36.

The Court received the ordered mental health evaluation on August 22, 2012. Forensic Report, ECF No. 37. This Forensic Report concluded that Mr. Tucker meets the criteria for a diagnosis of "Borderline Personality Disorder" and, based on his self-reported history, that he may also meet the criteria for a diagnosis of "Posttraumatic Stress Disorder," although the evaluators were unable to confirm or disconfirm this latter diagnosis. Forensic Report 12. The Report further found that Mr. Tucker has an adequate rational and factual understanding of the charges against him and the legal process as it relates to his specific situation. Id. at 13. The Report ultimately concluded that Mr. Tucker is competent to proceed and will remain competent in the foreseeable future. Id. at 14.

A "Forensic Addendum," attached to the Forensic Report, concluded that, although Mr. Tucker meets the criteria for Borderline Personality Disorder and Posttraumatic Stress Disorder, he does not meet the criteria for a severe mental disease or defect according to the Insanity Defense Reform Act of 1984. Forensic Addendum 8, ECF No. 37. The Addendum further found that Mr. Tucker clearly understood the nature and quality, as well as the wrongfulness, of his acts at the time of

3

the alleged offenses.  Id.  The Addendum noted, however, that a final opinion regarding Mr. Tucker's criminal responsibility is a matter for a trier of fact.  Id.

On October 1, 2012, this Court held a competency finding hearing. After reviewing the Forensic Report at length, the Court determined that Mr. Tucker was competent and capable of proceeding to trial and assisting his attorney in this matter.  The Court did not make a finding as to Mr. Tucker's sanity at the time of the instant offense, concluding (with the parties' agreement) that sanity was an issue for the finder of fact at trial.

On December 20, 2012, this Court entered an order authorizing a magistrate judge to conduct guilty plea proceedings in this case.  On January 3, 2013 (three months after the competency hearing), Mr. Tucker requested and consented to a magistrate judge conducting such proceedings.  That same day, Mr. Tucker appeared before Magistrate Judge Douglas E. Miller and pled guilty to two counts of Brandishing a Firearm During a Crime of Violence, in violation of Title 18, United States Code, Section 924(c)(1), Counts Four and Six.  Judge Miller accepted the guilty plea and the matter was continued for sentencing.

After Mr. Tucker pled guilty to Counts Four and Six before Judge Miller, Mr. Tucker sent two letters to the Court (one undated but received on March 6, 2013 and a second dated March 17, 2013).  These letters complained that Mr. Tucker had been physically abused while

4

incarcerated, that his competency and sanity evaluation was not accurate, and that his attorney had done nothing about his complaints as to his treatment or the evaluation.  Mr. Tucker's primary complaint in these letters involved the quality of his representation; however the Court did not interpret either letter as requesting new counsel.

Mr. Tucker's sentencing was initially set for April 26, 2013 at 10:00 a.m. in Newport News.  The Presentence Report ("PSR") was prepared on March 21, 2013.  ECF No. 77.  On April 8, 2013, Mr. Tucker filed his position on sentencing indicating no objections to the PSR. ECF No. 94.  One week later, on April 15, 2013, defense counsel filed a motion to re-assess Mr. Tucker's sanity at the time of the offense. ECF No. 100.  Mr. Tucker claimed that the evaluators failed to follow up with his biological or adoptive parents and failed to obtain records from two medical centers.  Of note, Mr. Tucker did not challenge the Court's competency finding, only the Forensic Report's conclusions (which the Court did not adopt) concerning his sanity at the time of the offense.   On April 18, 2013, the Government filed a response in opposition to Mr. Tucker's motion, arguing that Mr. Tucker should not be allowed to withdraw his guilty plea and pursue an insanity defense. ECF No. 105.

By order of the Court, Mr. Tucker's sentencing hearing was continued pending the resolution of his motion for re-assessment of sanity.  The April 26, 2013 sentencing hearing was converted to a

motion hearing.  At the hearing, the Court heard argument concerning Mr. Tucker's motion to reevaluate his sanity at the time of the offense. When questioned about the status of Mr. Tucker's guilty plea, defense counsel noted that Mr. Tucker pled guilty before a magistrate judge and that this Court has not yet made a finding of guilt.  Defense counsel asked that the Court postpone its consideration of the plea until after the requested reevaluation.

The Court reviewed the "new information" that defense counsel alleged had not adequately been considered by Mr. Tucker's evaluators. Specifically, Defendant alleged that the evaluators failed to contact Mr. Tucker's parents, they did not obtain records from two medical centers, and they did not confirm Mr. Tucker's self-reported diagnoses. Defense counsel maintained that such new information was accessed by the Probation Officer preparing Defendant's PSR, which included the new information, and that such new information was available, had the evaluators attempted to procure it.

The Court attempted to contact the initial evaluator by phone at the April 26, 2013 hearing, but was unsuccessful.  The Court determined that the best way to proceed was to issue an order forwarding the new information to the initial evaluator and asking her to opine as to whether any of that new information would have affected her conclusions.  On May 2, 2012, the Court issued an order instructing the evaluator, Christina A. Pietz, Ph.D, to consider all of the

6

information forwarded by the Court and to advise the Court, in writing, whether and to what extent any such information impacted her previous conclusions as to both Mr. Tucker's sanity at the time of the offenses, and his competency to proceed and to assist his attorney in this matter. ECF No. 110.  The Court forwarded a copy of its May 2, 2012 order to the evaluator by letter dated May 6, 2012.  Pursuant to that Order, the letter included the following attachments: 1) Mr. Tucker's motion for reassessment; 2) the Government's response in opposition to Mr. Tucker's motion; 3) the PSR and Addendum prepared for sentencing; 4) a copy of Mr. Tucker's February 20, 2008 neuropsychological evaluation from Comprehensive Mental Health Associates; and 5) a copy of the transcript from the Court's April 26, 2013 hearing on Mr. Tucker's motion.

On June 20, 2013, the Court received the requested Forensic Addendum, dated May 29, 2013 ("Second Addendum").  ECF No. 113. Following a review of the above procedural history and the new information, the Second Addendum states that the evaluator's "opinion remains that Mr. Tucker meets the diagnostic criteria for Borderline Personality Disorder."  Second Addendum 2.  Additionally, the evaluator states that it "remains [her] opinion that Mr. Tucker does not meet the criteria for psychotic disorder," noting that "nothing in the new information suggest[s] Mr. Tucker ever presented as psychotic."  Id. at 3.  The Second Addendum then reviews the impact

7

of the new information on the evaluator's original opinion.  While the Second Addendum addresses only the question of Mr. Tucker's sanity, it does incorporate the Court's October 1, 2012 competency ruling, noting that "Mr. Tucker was deemed competent to proceed in the foreseeable future."  Second Addendum 1.

Regarding Mr. Tucker's sanity at the time of the instant offenses, the Second Addendum notes that the July 2012 Forensic Report and Addendum diagnosed Mr. Tucker with Posttraumatic Stress Disorder, by history, and Borderline Personality Disorder.  Id. at 4.  Although the Second Addendum finds that Mr. Tucker does not meet the criteria for a diagnosis of PTSD,[1] it concludes that: "Nevertheless, a diagnosis of PTSD or Borderline Personality Disorder does not meet the criteria for a mental disease or defect according to the Insanity Defense Reform Act of 1984."  Id.  Regarding the second element of the insanity defense—that Mr. Tucker was unable to understand the nature and quality or wrongfulness of his acts—the Second Addendum concluded, for the same reasons indicated in the original Report and Addendum: "As noted, based on Mr. Tucker's description of his charges, and his reasoning behind his actions, it was my opinion, and remains my opinion, that he was able to appreciate the nature and quality, as well as the wrongfulness

---

[1] Regarding the diagnosis of Posttraumatic Stress Disorder (PTSD), the Second Addendum opines that, although Mr. Tucker experiences "irritability or outbursts of anger," he did not previously endorse nor does he otherwise meet any of the criteria required to support a diagnosis of PTSD.  Id. at 3.

of his acts." Id. (emphasis added).

Less than a week after the Court received the Second Addendum, Mr. Tucker sent a third letter, dated June 24, 2013 and docketed on June 26, 2013, complaining that his attorney "is not doing his job," "is very ineffective," and "hasn't done anything to help [Mr. Tucker] on [his] case." ECF No. 114. Mr. Tucker claimed that his life has been put in danger and that his attorney has violated the "rules and conduct relating to the bar association." Id. He expressly stated, "I want a new attorney as soon as possible." Id. The Court docketed Mr. Tucker's letter as a Motion for New Counsel. ECF No. 114.

On July 2, 2013, Mr. Tucker's attorney, Kevin Diamonstein, filed a Motion to Withdraw as Attorney, citing Mr. Tucker's "current position" as evidence that Mr. Tucker "no longer has confidence in counsel's ability or desire to adequately represent him." ECF No. 115 at 3. Mr. Diamonstein asked for leave to withdraw and proposed that, because Mr. Tucker pled guilty before a magistrate judge and the Court has not yet entered a finding of guilt, Mr. Tucker's new counsel be given "the opportunity . . . to file a motion to withdraw [the] plea and reschedule the matter for trial," which approach would give new counsel "adequate time to prepare." Id.

The Court set a hearing for Tuesday, July 9, 2013 at 11:00 a.m on Mr. Tucker and Mr. Diamonstein's respective motions and its receipt of the Second Addendum. At the hearing, the Court heard from Mr.

9

Diamonstein and Mr. Tucker.   The Court and parties also heard via telephone over the Court's audio speakers, from Dr. Pietz regarding her opinion as to the effect of the "new information" on her prior evaluation.   Mr. Tucker testified that Mr. Diamonstein had not taken action regarding Mr. Tucker's complaints of suffering abuse at the prison facilities, took nine months from the initial evaluation to file the motion to reassess, and was not responding to his letters, answering his phone, or forwarding orders that Mr. Tucker wanted filed.   July 9, 2013 Hearing on Defense Motions Tr. 16-17, ECF No. 120 (hereinafter "Defense Mot. Tr.__").

The Court also heard from Mr. Diamonstein regarding his efforts on Mr. Tucker's behalf.   Mr. Diamonsten stated that he had in fact met with Mr. Tucker a total of eighteen times and that he had responded to multiple letters at once because they all addressed the same subject, the status of the case.   Id. at 24.   Mr. Diamonstein also stated that he had discussed the potential of a defense of duress with Mr. Tucker at the beginning of the case but did not believe that defense was available.   Id. at 25.   Additionally, Mr. Diamonstein elaborated on his reason for not presenting the motion to withdraw Mr. Tucker's guilty plea at that time.   Mr. Diamonstein stated that it would be difficult for him to argue for withdrawal of the guilty plea when he had

10

recommended the guilty plea to his client initially.[2]  Id. at 27.  Mr.
Diamonstein described it as placing him in "an awkward position."  Id.
at 56.

Mr. Tucker also testified regarding the contents of a letter he
had sent to the court prior to appearing at the hearing.[3]  Id. at 17-18.
Mr. Tucker stated that Mr. Diamonstein had told him that he had "done
his crime out of duress."  Id. at 18.  Mr. Tucker then stated that
"[his] brother put it all on [him], but [his brother] gave [Mr. Tucker]
the gun and sent [him] out there to go rob all them stores."  Id.  Mr.
Tucker then made statements regarding abuse he had suffered in the past,
including that his brother had tried to kill him and was or had been
sexually harassing Mr. Tucker's girlfriend and that "the dude that set
it up"[4] had sexually harassed Mr. Tucker while he was in the group home
in 2011.  Id. at 19-20.  Mr. Tucker reiterated that his complaint was
that he had been coerced to do the crime and further stated that he
"didn't benefit from it."  Id. at 20-21.  However, Mr. Tucker then
stated that his brother had known what was going on and had encouraged

---

[2] Mr. Diamonstein stated that although it is a significant plea with a
mandatory minimum sentence of 32 years, he had recommended it to his client
because, under the plea agreement, the Government was not initiating the third
robbery charge, which would have included an additional gun charge, thus
reducing the mandatory minimum sentence from 57 years to 32 years.  Defense
Mot. Tr. 25.

[3] The letter referenced by Mr. Tucker in the hearing was received by the court
on July 9, 2013 and was dated July 7, 2013.  Due to its substantive content,
the Court docketed it as a Motion to Withdraw Plea. ECF No. 117 (hereinafter
"Pro Se Mot.")

[4] Mr. Tucker also describes this incident in his July 7, 2013 letter, in which
he identifies this person as "Terry." Pro Se Mot. 2.

him to do the robberies rather than trying to stop Mr. Tucker, "knowing that [Mr. Tucker] . . . can be easily pressured." Id. at 21-22.

The Court and parties also heard testimony from Dr. Pietz, Ph.D., via telephone over the Court's audio speakers, and discussed the Second Addendum to the Forensic Report with her. Dr. Pietz explained that she had only addressed sanity in the Second Addendum because competency is a present-tense evaluation which would require an interview with Mr. Tucker. Id. at 29. However, Dr. Pietz noted that a finding of not competent requires a severe mental defect which she still does not believe to be the case with Mr. Tucker. Id. at 30.

Ultimately, the Court denied the motions for new counsel and in so doing noted that Mr. Diamonstein has been active in his role as defense counsel for Mr. Tucker, and the first complaint from Mr. Tucker regarding Mr. Diamonstein's performance came nearly a year after representation began and well after the guilty plea had been entered. Id. at 61-68. The Court also found that there was nothing in the Second Addendum to the Forensic Report that caused the Court to change its conclusion that Mr. Tucker is competent and noted that sanity is still an issue for the jury to decide should defendant's guilty plea be withdrawn. Id. at 83. The Court then reviewed the standard for withdrawal of a guilty plea due to defendant's indication that they would be filing such a motion as their next action in this case. Id. at 84.

On July 9, 2013, the Court received a letter from Mr. Tucker dated July 7, 2013, which was docketed as a Motion to Withdraw Plea.  Motion to Withdraw Plea, ECF No. 117 (hereinafter "Pro Se Mot.").  In this letter, Mr. Tucker made several accusations against his attorney, family members, co-defendants, and stated that he wanted to withdraw his guilty plea and be tried before a jury.  Mr. Diamonstein filed two nearly identical motions to withdraw Mr. Tucker's guilty plea with Mr. Tucker's letter as an attachment to each on July 17, 2013 and July 18, 2013.  ECF No. 118 & 119.[5]  The Government filed a response in opposition to these motions to withdraw defendant's guilty plea on July 25, 2013.  ECF No. 122.

## II. Standard of Review

"Guilty pleas 'are indispensable in the operation of the modern criminal justice system,' and the finality of such pleas is a matter of 'particular importance.'" United States v. Thompson-Riviere, 561 F.3d 345, 347 (4th Cir. 2009) (quoting United States v. Dominguez Benitez, 542 U.S. 74, 82-83 (2004)).  Federal Rule of Criminal Procedure 11(d)(1) provides that "[a] defendant may withdraw a plea of guilty . . . before the court accepts the plea for any reason or no reason." Fed. R. Crim. P.  11(d)(1).  However, after a district court accepts a guilty plea in a criminal case, the plea can only be

---

[5] As the July 18, 2013 filing appears to have been made to remove an unrelated PDF program advertisement, with no changes made to the substance of the motion, we will treat July 17, 2013 as the date of filing.

withdrawn if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2).[6]

## A. Magistrate Judge's Authority

The Fourth Circuit has held that Rule 11(d)(1) is no longer applicable following a plea before a magistrate judge because "magistrate judges possess the authority to bind defendants to their plea for purposes of Rule 11, so long as district judges retain the authority to review the magistrate judge's actions de novo." United States v. Benton, 523 F.3d 424, 429 (4th Cir. 2008). Such authority derives from the "additional duties" provision of the Federal Magistrates Act, which provides that "[a] magistrate judge may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U.S.C. § 636(b)(3); see also Benton, 523 F.3d at 431. In recognizing this authority, the Fourth Circuit expressly rejected the argument that a magistrate judge's findings constitute merely "proposed findings and conclusions of law . . . as to a plea acceptance." Benton, 523 F.3d at 431. To hold otherwise would "grant defendants a dry run or dress rehearsal—a procedure in which a defendant can agree to a plea before a magistrate judge, and then withdraw that plea without any complaint that the Rule 11 hearing was deficient in any way." Id. at 432. The Fourth Circuit

---

[6] The same standard for withdrawal was formerly located in Rule 32(d) of the Federal Rules of Criminal Procedure.

emphasized the practical consequences of permitting such withdrawals:

> <u>This, of course, risks rendering plea proceedings before magistrate judges meaningless.</u>  See <u>United States v. Hyde</u>, 520 U.S. 670, 677 (1997) (noting, in a slightly different setting that, "[w]ere withdrawal automatic in every case" for any reason, "the guilty plea would become a mere gesture, a temporary and meaningless formality" (internal quotation omitted)).  In cases where a defendant withdraws his plea for no reason, the proceedings before the magistrate judge will have been rendered a nullity—a complete waste of judicial resources.  In fact, making Rule 11 hearings non-binding may encourage defendants to use magistrate-led colloquies as go-throughs in order to gauge whether they may later experience "buyer's remorse."

<u>Id.</u> at 432-33 (emphasis added).  Because district courts retain the authority to conduct a <u>de novo</u> review of any substantive or procedural concerns raised regarding a defendant's plea proceeding before a magistrate judge, a defendant having consented to participate in such a proceeding may not withdraw his plea for "any or no reason."  Fed. R. Crim. P. 11(d)(1).  Rather, "the substantive rule of decision is whether the defendant has established a 'fair and just reason' to withdraw his plea after the magistrate judge has accepted it."  <u>Benton</u>, 523 F.3d at 432.  See <u>also</u>, Fed. R. Crim. P. 11(d)(2).  Furthermore, it is the defendant who bears the burden of demonstrating that a withdrawal of their guilty plea should be granted.  <u>United States v. Riggs</u>, 493 F.App'x 401, 403 (4th Cir. 2012) (citing <u>United States v. Dyess</u>, 478 F.3d 224, 237 (4th Cir. 2007).

### B. Rule 11(d)(2)—"Fair and Just Reason"

"A defendant has no 'absolute right' to withdraw a guilty plea,

15

and the district court has discretion to decide whether a 'fair and just reason' exists upon which to grant a withdrawal. United States v. Bowman, 348 F.3d 408, 413-14 (4th Cir. 2003) (citing United States v. Ubakanma, 215 F.3d 421, 424 (4th Cir. 2000)). "Nor does a defendant automatically get an evidentiary hearing as a matter of right whenever he seeks to withdraw his guilty plea." United States v. Moore, 931 F.2d 245, 248 (4th Cir. 1991) (citing United States v. Thompson, 680 F.2d 1145, 1151-52 (7th Cir. 1982), cert. denied, 459 U.S. 1089 (1982)). While it is well settled that "'evidentiary hearings should be liberally granted prior to sentencing,' that hearing need only be granted 'when a 'fair and just reason' for withdrawal of the plea is presented.'" Moore 931 F.2d at 248 (quoting United States v. Fountain, 777 F.2d 351, 358 (7th Cir. 1985), quoting Thompson, 680 F.2d at 1152).

    The Fourth Circuit has set forth that "a 'fair and just' reason for withdrawing a plea is one that essentially challenges . . . the fairness of the Rule 11 proceeding." United States v. Puckett, 61 F.3d 1092, 1099 (4th Cir. 1995) (citing United States v. Lambey, 974 F.2d 1389, 1394 (4th Cir. 1992) (en banc)). As such, an appropriately conducted Rule 11 proceeding raises a strong presumption that the defendant's plea is final and binding. Lambey, 974 F.2d at 1394. See Thompson-Riviere , 561 F.3d at 348 (quoting Bowman, 348 F.3d at 414 ("'[A] properly conducted Rule 11 guilty plea colloquy leaves a defendant with a very limited basis upon which to have his plea

16

withdrawn'. . . .") (internal citation omitted)); Beck v. Angelone, 261 F.3d 377, 396 (4th Cir. 2001) (holding that, absent "clear and convincing evidence to the contrary," a defendant is "bound by his representations" made during the plea colloquy); United States v. Leech, 409 F. App'x 633, 638 (4th Cir. 2011) ("Of particular significance, we note that Leech's request to withdraw his guilty plea, . . . contradict[s] many of the statements that he made under oath during the Rule 11 plea hearing. . . . Leech's motion effectively placed him in the untenable position of arguing that he was lying under oath during his sworn testimony in the Rule 11 hearing, but was telling the truth in his unsworn statements in his motion to withdraw his guilty plea."); United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005) (where, in the context of a § 2255 motion, the court held that "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements. Otherwise, a primary virtue of Rule 11 colloquies would be eliminated-permit[ting] quick disposition of baseless collateral attacks.") (citations omitted).

Accordingly, the Fourth Circuit has articulated the following list of factors a district court should consider in determining whether a defendant has offered a "fair and just" reason for withdrawal of a

17

guilty plea, including:

> (1) whether the defendant has offered credible evidence that his plea was not knowing or not voluntary, (2) whether the defendant has credibly asserted his legal innocence, (3) whether there has been a delay between the entering of the plea and the filing of the motion, (4) whether defendant has had close assistance of competent counsel, (5) whether withdrawal will cause prejudice to the government, and (6) whether it will inconvenience the court and waste judicial resources.

Moore, 931 F.2d at 248. The Moore opinion expressly recognizes that such factors are non-exclusive and that the determination of whether withdrawal is fair and just "is entrusted to the discretion of the district court." Id.

In opinions subsequent to Moore, the Fourth Circuit has suggested that certain Moore factors should weigh more heavily than others in the district court's evaluation of the withdrawal motion. See, e.g., United States v. Faris, 388 F.3d 452, 456 (4th Cir. 2004) ("The most important of these factors is the first one . . . ."); United States v. Sparks, 67 F.3d 1145, 1154 (4th Cir. 1995) ("The factors that speak most straightforwardly to the question whether the movant has a fair and just reason to upset settled systemic expectations by withdrawing her plea are the first, second, and fourth. In contrast, the third, fifth, and sixth factors are better understood as countervailing considerations that establish how heavily the presumption should weigh in any given case."). The emphasis placed on the first Moore factor in particular by the Fourth Circuit further supports that a properly

18

conducted Rule 11 colloquy, which establishes that a defendant's plea is knowing and voluntary, weighs heavily against the withdrawal of a guilty plea.

Furthermore, the Fourth Circuit has emphasized the fact that the Moore factors are not meant to be a rigid test, and that such factors should merely "inform" a district court's judgment as to whether the request for plea withdrawal satisfies the "fair and just" standard set forth in Rule 11(d). Sparks, 67 F.3d at 1154. More recently, the Fourth Circuit has again recognized that the Moore factors are merely guideposts in the court's consideration of the totality of the circumstances that bear on whether it is "fair and just" to permit a defendant to withdraw his plea of guilty. Thompson-Riviere, 561 F.3d at 348. In Thompson-Riviere, the Fourth Circuit recently explained:

> The consideration of [the Moore] factors is not "a rigidly mechanistic test, for the conspicuous fuzziness of [the] operative terms-'fair and just'-precludes such an endeavor." However, a district court typically should balance these factors, along with any other pertinent information, to reach its decision.

Id. (quoting Sparks, 57 F.3d at 1154) (emphasis added) (second alteration in original).

Thus, while the Moore factors demand consideration as guideposts in the Court's analysis, the most significant consideration in determining whether a defendant has established a "fair and just" reason for the withdrawal of a guilty plea is whether the Rule 11

19

proceedings were conducted properly. <u>Bowman</u>, 348 F.3d at 414.

### III. Discussion

A defendant, having consented to participate in a plea proceeding before a magistrate judge, may not withdraw his plea for "any or no reason." Fed. R. Crim. P. 11(d)(1). Rather, "the substantive rule of decision is whether the defendant has established a 'fair and just reason' to withdraw his plea after the magistrate judge has accepted it." <u>Benton</u>, 523 F.3d at 432. Based on the procedural history of this case, Mr. Tucker is no longer free to withdraw his plea of guilty for any or no reason, as it was accepted by Judge Miller's Order entered on January 3, 2013. ECF No. 71. Rather, Mr. Tucker may only withdraw his guilty plea "(A) if the court rejects the plea agreement under Rule 11(c)(5); or (B) the defendant can show <u>a fair and just reason</u> for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2) (providing for withdrawal of a guilty plea "after the court accepts the plea, but before it imposes sentence"). A district court is not obliged to accept a particular plea agreement between the government and an accused, as it always has the authority to reject any plea agreement, including one it has previously accepted. <u>United States v. Lewis</u>, 633 F.3d 262, 270 (4th Cir. 2011). However, Mr. Tucker has not specifically asked the Court to reject the plea agreement, and even if he had done so, the Court finds no reason to reject the plea agreement in this case. Thus, Mr. Tucker's sole recourse for the withdrawal of

his guilty plea is the demonstration of a "fair and just reason" for the withdrawal.

In addressing whether defendant has met his burden, the Court will use the Moore factors as guideposts.  However the Court will address the validity of the Rule 11 proceedings first, as "[t]he most important consideration in resolving a motion to withdraw a guilty plea is an evaluation of the Rule 11 colloquy at which the guilty plea was accepted."  Bowman, 348 F.3d at 414.

### A. Rule 11 Colloquy

"If an appropriately conducted Rule 11 proceeding is to serve a meaningful function, on which the criminal justice system can rely, it must be recognized to raise a strong presumption that the plea is final and binding."  Lambey, 974 F.2d at 1394.  In this case, the Magistrate Judge engaged in a very thorough Rule 11 colloquy with Michael Jay Tucker.  January 3, 2013 Guilty Plea Hearing Tr., ECF No. 125 (hereinafter "Guilty Plea Tr."); See, Puckett, 61 F.3d at 1099 (where Fourth Circuit describes the district court's "thorough Rule 11 colloquy" regarding sentencing).  "[A] properly conducted Rule 11 guilty plea colloquy leaves a defendant with a very limited basis upon which to have his plea withdrawn."  Bowman, 348 F.3d at 414.  The Magistrate Judge in the instant case informed Mr. Tucker of the burden of proof the Government would have to meet at trial for the charges being pled to, the trial rights the defendant would forfeit by pleading

guilty, the mandatory minimum and maximum penalties, including restitution and the consequences of being assigned felon status, that the guideline sentence could not be determined until after the presentence report had been completed, and that sentencing was within the sole discretion of the court.  Guilty Plea Tr. 8-24.  During the colloquy, the Magistrate Judge ascertained that the defendant read and understood the plea agreement and that defendant read and agreed with the statement of facts.  Id. at 29.  The Magistrate Judge also ascertained that the defendant had the close assistance of counsel and determined that defendant was not being coerced or forced to plead guilty and that his plea was both knowing and voluntary.  Id. at 17-18, 19, 25, & 28.  Moreover, having carefully read the entire transcript of the hearing, the Court observes that the Magistrate Judge was careful to allow Mr. Tucker to consult with his attorney any time Mr. Tucker had a question, and the Magistrate Judge thoroughly addressed all questions or requests for clarification from Mr. Tucker.  In short, the plea colloquy in this case was exactly the kind of colloquy that should be conducted.  For these reasons, the Court concludes that the plea colloquy was properly and thoroughly conducted and, therefore, is strongly presumed to be final and binding upon Mr. Tucker.

### B. U.S. v. Moore Factors

Mr. Tucker's argument for the withdrawal of his guilty plea appears to have two bases; that the plea was involuntary due to

22

defendant's unjust treatment, and that defendant is legally innocent under a theory of duress.  As noted above, the Court will use the following list of factors from Moore as its analytical framework:

> (1) whether the defendant has offered credible evidence that his plea was not knowing or not voluntary, (2) whether the defendant has credibly asserted his legal innocence, (3) whether there has been a delay between the entering of the plea and the filing of the motion, (4) whether defendant has had close assistance of competent counsel, (5) whether withdrawal will cause prejudice to the government, and (6) whether it will inconvenience the court and waste judicial resources.

Moore, 931 F.2d at 248.

### 1. Plea was knowing and voluntary

Regarding the first of the Moore factors, defendant fails to put forth credible evidence that his plea was not knowing or not voluntary. Moore 931 F.2d at 248.  Defendant alleges in his motion that "[Mr. Diamonstein] made me sign a plea knowing that I am being treated unjustly." Pro Se Mot. 1.  Mr. Tucker appears to be alleging that he signed the plea agreement involuntarily, however the underlying complaint is that Mr. Tucker was not satisfied with his treatment. Furthermore, Mr. Tucker's unsworn statement in this letter to the court directly contradicts Mr. Tucker's sworn statement at the Rule 11 proceedings before Magistrate Judge Miller, wherein Mr. Tucker affirmed that he was entering into the plea agreement freely and voluntarily. Plea Tr. 25 & 28.  Mr. Tucker also affirmed at the Rule 11 proceedings that no one had forced or coerced him to plead guilty.

Id. at 17-18.   In Leech, the Fourth Circuit paid particular attention to the fact that in his motion for withdrawal of his guilty plea, the defendant in that case had directly contradicted the sworn statements he made under oath during the Rule 11 proceedings.   409 F. App'x at 638.   Doing so places the defendant in "the untenable position of arguing that he was lying under oath during his sworn testimony in the Rule 11 hearing, but was telling the truth in his unsworn statements in his motion to withdraw his guilty plea."   Id.   A defendant may not counter or retract sworn testimony by means of unsworn statements.

Due to the fact that Mr. Tucker's claim directly contradicts his sworn testimony and furthermore appears to be, in essence, a complaint as to his treatment couched in the language of an alleged involuntary plea, the Court does not find credible Mr. Tucker's claim that his defense counsel forced him to plead guilty.   Mr. Tucker has failed to offer credible evidence to support his claim and, as such, the first Moore factor weighs against withdrawal of the guilty plea.

### 2. Legal Innocence Not Credibly Asserted

For the second Moore factor, defendant's burden "is to credibly assert his legal innocence: that is, to present evidence that (1) has the 'quality or power of inspiring belief,' United States v. Welsh, 774 F.2d 670, 672 (4th Cir. 1985) and (2) tends to 'defeat the elements in the government's prima facie case' or to 'make out a successful affirmative defense.' Sparks, 67 F.3d at 1151." Thompson-Riviere, 561

F.3d at 353. "In other words, the defendant must make a <u>factual argument</u> that supports a legally cognizable defense." <u>United States v. Hamilton</u>, 510 F.3d 1209, 1214 (10th Cir. 2007) (citations omitted and emphasis in original).

In his motion to withdraw his guilty plea, Mr. Tucker asserts that he was coerced and threatened into committing the charged offenses and thus appears to be asserting his legal innocence through an affirmative defense of duress. Pro Se Mot. 1-2. The affirmative defense of duress requires that defendant show "that he acted under a reasonable fear of an <u>imminent</u> threat of bodily harm and that he had no reasonable choice but to commit the illegal act." <u>United States v. King</u>, 879 F.2d 137, 138-139 (4th Cir.), cert. denied, 493 U.S. 900 (1989) (emphasis in original). "[I]f there was a reasonable, legal alternative to violating the law, 'a chance both to refuse to do the criminal act and also to avoid the threatened harm,' the defense[] will fail." <u>United States v. Bailey</u>, 444 U.S. 394, 410 (1980) (citing W. LaFave & A. Scott, Handbook on Criminal Law § 28, pp. 379 (1972)). Thus, to credibly assert legal innocence, Mr. Tucker must make a credible factual argument that there was an imminent threat of death or serious bodily harm which could not be reasonably avoided other than through the commission of the offenses.

However, an obstacle to Mr. Tucker's ability to do so through his motion is that Mr. Tucker is bound to the representations made during

the plea colloquy and cannot refute sworn testimony with his unsworn statements. Beck v. Angelone, 261 F.3d at 396 (holding that, absent "clear and convincing evidence to the contrary," a defendant is "bound by his representations" made during the plea colloquy); Leech, 409 F. App'x at 638 ("[defendant's] motion effectively placed him in the untenable position of arguing that he was lying under oath during his sworn testimony in the Rule 11 hearing, but was telling the truth in his unsworn statements in his motion to withdraw his guilty plea."). In the statement of facts, which Mr. Tucker agreed to under oath at the Rule 11 hearing, Mr. Tucker agreed that his participation "was undertaken knowingly, willingly, intentionally, and unlawfully and not as a result of mistake, accident, or other innocent reason." Statement of Facts ¶ 14, ECF No. 70; Plea Tr. 29.   Thus, Mr. Tucker agreed, under oath, that it was true and accurate to state that he had participated in the criminal conduct described in the statement of facts willingly and not as a result of an innocent reason, such as duress.   See, Ubakanma, 215 F.3d at 424-25 ("As to the second factor, Ubakanma conclusorily asserts his legal innocence. In light of his contrary statements during the Rule 11 proceeding, we also agree with the district court that this factor weighs strongly in favor of the Government.").   Mr. Tucker's assertions that his participation was coerced contradict his earlier sworn statements at the Rule 11 hearing and place him in an "untenable position." Leech, 409 F. App'x at 638.

However, the Court will also consider Mr. Tucker's sworn testimony at the July 7, 2013 hearing on the motions for new counsel. Even if the Court were to disregard Mr. Tucker's sworn statements at the Rule 11 hearing, and consider the assertions made in Mr. Tucker's motion together with Mr. Tucker's sworn testimony at the July 7, 2013 hearing, Mr. Tucker still fails to make a factual argument that credibly asserts his innocence. Thompson-Riviere, 561 F.3d at 353; Hamilton, 510 F.3d at 1214.

In his motion, Mr. Tucker describes past interactions with his brother in which he had allegedly been abused by his brother, physically and sexually, and states that his brother has been sexually harassing Mr. Tucker's girlfriend. Pro Se Mot. 2. Mr. Tucker asserts that he was scared because "the man had a loaded gun," Id., however, earlier in the letter Mr. Tucker states that his brother gave him the gun and told him to commit the robberies. Id. at 1. It is incongruous that Mr. Tucker would have been in imminent danger of death or serious bodily injury from his armed brother if his brother handed him the gun and then told him to commit the robberies. Additionally, Mr. Tucker stated under oath at the July 7, 2013 hearing that the incident in which his brother had threatened him with the gun had occurred previously and Mr. Tucker had called 911 as a result. Defense Mot. Tr. 19.

Mr. Tucker also claims that he was coerced to commit the charged offenses because he was pressured. In support of this, Mr. Tucker

27

stated that his brother, his co-defendant Lindsay George, and "Terry" all knew what was going to happen and told Mr. Tucker to go do the robberies. Id. at 18-19. Mr. Tucker stated under oath that his brother urged him to commit the robberies, including texting him during their commission, and didn't try to stop him, "knowing that. . . [Mr. Tucker] can be easily pressured or something like that." Id. at 22. Mr. Tucker's assertions of duress are based on an asserted fear of further abuse, sexual or physical, toward himself or sexual harassment of his girlfriend. Id. at 19-20. That fear is based on alleged prior abusive encounters described in his testimony, however, at no point in his sworn testimony did Mr. Tucker allege that there was an imminent threat of death or serious injury. The immediate pressure to commit the robberies as described by Mr. Tucker appears to have come from people around Mr. Tucker simply urging Mr. Tucker to commit the robberies or knowing of the robberies and failing to stop him. Additionally, the fact that the robberies occurred over a period of days seems to demonstrate that had Mr. Tucker been coerced to commit the offenses, Mr. Tucker had ample time and opportunity to seek a reasonable legal alternative, such as contacting law enforcement to seek protection. Moreover, Mr. Tucker's assertions of coercion are belied by his admission that he possessed a gun during the robberies, and that his brother did not participate in the robberies.

The facts as recited by Mr. Tucker fail to support the necessary

28

elements of the affirmative defense of duress.  As such, Mr. Tucker has failed to provide a factual argument which would support a cognizable defense.  Thompson-Riviere, 561 F.3d at 353; Hamilton, 510 F.3d at 1214.  Other than the conclusory statement that he was coerced, Mr. Tucker's statements at the July 7, 2013 hearing fail to show that Mr. Tucker's participation was due to duress as such statements merely contextualize his past and the manner in which he handles extreme social pressure.  Such statements do not reflect a threat of imminent death or serious bodily injury such that Mr. Tucker had no reasonable legal alternative.  As the unsworn statements in Mr. Tucker's motion contradict his sworn testimony at the Rule 11 hearing, as well as some of his testimony at the July 7, 2013 hearing, Mr. Tucker has not met his burden to credibly assert an affirmative defense of duress.  Mr. Tucker has not provided evidence with the "quality or power of inspiring belief," Welsh, 774 F.2d at 672, nor has he provided sufficient evidence to "make out a successful affirmative defense." Sparks, 67 F.3d at 1151. The second Moore factor thus weighs against withdrawal of the guilty plea.

### 3. Substantial Delay

Regarding the third factor, there has been a significant delay between Mr. Tucker's January 3, 2013 plea and the July 7, 2013 and July 17, 2013 filings seeking to withdraw that plea.  As was explained by Mr. Diamonstein at the July 7, 2013 hearing on the defense motions,

a motion to withdraw the guilty plea had not been filed prior to the hearing as he had felt that filing such a motion would put him in an awkward position and it would be best for new counsel, if granted, to file that motion.  Defense Mot. Tr. 56; Mot. to Withdraw as Att'y 4, ECF No. 115.  However, defendant's letter motion for new counsel was not filed until June 26, 2013.  ECF No. 114.  Prior to that, defendant had filed motions to reassess for sanity and to continue sentencing on April 15, 2013 and April 18, 2013, respectively, more than three months after the acceptance of Mr. Tucker's guilty plea and, at the April 26 hearing on those motions, defense counsel asked that the Court postpone its consideration of the plea until after the requested reevaluation.  Having accounted for the delay after April 15, 2013, there are still over three months of inaction which are unaccounted for.

The length of time at which a delay becomes substantial depends upon the specific facts before the court.  See e.g., Moore, 931 F.2d at 248 (describing a six week delay as a long delay); United States v. Nicholson, 676 F.3d 376, 384 (4th Cir. 2012) (where delay from December 22, 2010 to February 2011 between guilty plea and contacting his attorney about filing a motion amounted to substantial delay.); Bowman, 348 F.3d at 415-16 (where a three month delay was "not too long"); United States v. Davis, No. 12-4542, 2013 WL 3069869 (4th Cir. June 20, 2013) ("On the third factor, timing, [defendant] filed his

motion almost two months after pleading guilty. A district court could count a delay of this length against a defendant.").

Even reviewing the circumstances in the light most favorable to Mr. Tucker, only three months of the six month delay is accounted for by his pursuit of other motions before this Court and the ultimate delay period would be a delay of over three months.  While it is possible under Fourth Circuit precedent that a delay of three months could be favorable to Mr. Tucker, given that this case has been before this Court for well over 18 months, and given the fact that Mr. Tucker has not been hesitant to write the Court on his own, the Court concludes that the delay in this case was substantial.  Therefore, the third Moore factor weighs against withdrawal of the guilty plea.

### 4. Close Assistance of Competent Counsel

To prevail on this factor, Mr. Tucker must demonstrate "(1) that his counsel's performance 'fell below an objective standard of reasonableness' and (2) that 'there [was] a reasonable probability that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial.'" Bowman, 348 F.3d at 416 (citations omitted).  See also Ubakanma, 215 F.3d at 425. "Under this standard, our inquiry is limited to whether [defendant]'s counsel was reasonable under prevailing professional norms, and in light of the circumstances." Bowman, 348 F.3d at 416 (internal quotations and citations omitted).

31

Fortunately, due to the July hearing on the motions for new counsel, the Court is already is possession of evidence as to the performance of defendant's counsel, Mr. Diamonstein, and his representation of Mr. Tucker.  At the July 7, 2013 hearing, Mr. Diamonstein stated that he had met in person with Mr. Tucker eighteen times. Defense Mot. Tr. 23.  Mr. Diamonstein also stated that he had discussed duress as a possible defense with Mr. Tucker at the beginning of the representation but did not believe that defense to be available to Mr. Tucker after such discussion with his client.  Id. at 25. Furthermore, Mr. Diamonstein stated that while the plea agreement meant a mandatory minimum of 32 years, Mr. Tucker was facing a third robbery charge, with an additional gun charge, which would have meant an additional 25 years minimum, not even considering the robbery charges and conspiracy charge which Mr. Tucker would have also faced at trial. Id. at 25.  See Bowman, 348 F.3d at 416 (where Court found that a record showing defendant's plea deal to result in a sentence of 22 years, but if found guilty at trial on other of two counts, would face 20 years to life imprisonment, fails to support defendant's contention that he suffered from a lack of close assistance of competent counsel). Additionally, it was noted by the Court at the July 7, 2013 hearing that, less than a month after being assigned to Mr. Tucker, Mr. Diamonstein moved to have him evaluated mentally and then moved to have his sanity reassessed when new information came to light through the

Pre-Sentence Report prepared in April.  Defense Mot. Tr. 61-62.  The
Court also noted at the hearing that Mr. Tucker and Mr. Diamonstein
had conferred frequently throughout the hearing.  Id. at 67.

It is evident from the record that defendant has had the assistance
of close competent counsel.  Furthermore, Mr. Tucker himself
acknowledged at the Rule 11 hearing in his sworn statements that he
was satisfied that his attorney had fully considered and discussed with
him any possible defenses.  See United States v. Cline, 286 F. App'x
817, 822 (4th Cir. 2008) (where Court found that the fourth Moore factor
was not in defendant's favor as, contrary to defendant's claims, during
the Rule 11 hearing she stated she had sufficient time with her attorney
to review her case and her plea agreement and was satisfied with his
efforts on her behalf.) See also, Ubakanma, 215 F.3d at 425.  Thus,
the fourth Moore factor also weighs against withdrawal of the guilty
plea.

## 5. Prejudice to the Government

"[W]hen a district court determines that 'the first four factors
... militate against granting the defendant's motion, it can reasonably
refrain from trying to ascertain just how much withdrawal of the plea
would prejudice the government and inconvenience the court.'" Davis,
2013 WL 3069869 (4th Cir. June 20, 2013) (quoting Sparks, 67 F.3d at
1154).  While this is the case here, the Court will, for the sake of
diligence, complete the analysis.

Defendant alleges that withdrawal of the guilty plea will not prejudice the Government because witnesses are "local and easily accessible by summons on whatever trial date the court may schedule." Mot. to Withdraw Guilty Plea 4, ECF No. 117.  However, the significant expanse of time which has passed since the events transpired will have inevitably led to a deterioration of the evidence through the loss of details and clarity from witnesses' memory of the events.  Thus, the fifth Moore factor also weighs against withdrawal of the guilty plea.

## 6. Inconvenience to the Court and Wasting of Judicial Resources

Given that this case has been before this Court for well over 18 months, any additional delay is undesirable.  The Court has already held numerous hearings in this matter, including the competency and sanity-related proceedings and the guilty plea hearing conducted by Judge Miller.  Additionally, granting such motion would require the Court to reset the matter for trial, further delaying proceedings. It is clear that allowing Mr. Tucker to withdraw his guilty plea at this late stage will inconvenience the Court and waste judicial resources. Therefore, the sixth Moore factor also weighs against withdrawal of the guilty plea.

## C. Conclusion

"The most important consideration in resolving a motion to withdraw a guilty plea is an evaluation of the Rule 11 colloquy at which the guilty plea was accepted."  Bowman, 348 F.3d at 414. "If an

34

appropriately conducted Rule 11 proceeding is to serve a meaningful function, on which the criminal justice system can rely, it must be recognized to raise a strong presumption that the plea is final and binding." Lambey, 974 F.2d at 1394.  The plea colloquy was properly and thoroughly conducted and, therefore, is strongly presumed to be final and binding upon Mr. Tucker.  Furthermore, none of the Moore factors weigh in favor of Mr. Tucker's motion, and Mr. Tucker has therefore failed to assert a "fair and just" reason to withdraw the plea.  Accordingly, Mr. Tucker's guilty plea is final and binding.

## IV. CONCLUSION

The Court holds, for the foregoing reasons, that Defendant has failed to establish a fair and just reason to withdraw his guilty plea, as required by Fed. R. Crim. P. 11(d)(2).  Accordingly, Mr. Tucker's motion for withdrawal of his guilty plea is **DENIED**.

The Clerk is **DIRECTED** to send a copy of this Order to all counsel of record.

**IT IS SO ORDERED**.

/s/ _____

_____

Mark S. Davis

UNITED STATES DISTRICT JUDGE

Norfolk, Virginia

November 15 , 2013